Rabin, J.
 

 The primary issue on this appeal is whether New York City has the power to regulate retail prices of cigarettes so as to require retailers to maintain a difference in price between brands that have a higher tar and nicotine content and those which have a lower tar and nicotine content.
 

 New York City, pursuant to a State enabling statute, placed a tax on the sale of cigarettes the amount of which is based on the tar and nicotine content of the cigarettes sold. The New York City Tax Regulations require a difference in the retail price of cigarettes at least equivalent to the amount of tax attributable to their tar and nicotine content.
 

 Defendant David Cook (Cook) is the manager of a discount drugstore in New York City. On January 11, 1972 an investí
 
 *104
 
 gator for the New York City Finance Administration simultaneously purchased a pack of Winston, a “ high ” tar and nicotine cigarette requiring a “ tar ” tax of four cents, and a pack of True, a “ low ” tar and nicotine cigarette requiring no
 
 “
 
 tar ” tax. The price charged for each was 50 cents. On the basis of sale at these prices, Cook was convicted of violating the Administrative Code of the City of New York (§ D46-18.0, subd. f), and sentenced to pay a $10 fine.
 

 Cook admitted to the investigator that he did not differentiate on the basis of tar and nicotine content in pricing the various brands of cigarettes stating it was “ virtually impossible He argues, in appealing his conviction, that the price-differential requirement imposed by the city is illegal for five separate reasons:
 

 (1) the city does not have the power to impose the price differential; neither the local police power nor the State enabling statute authorizes it;
 

 (2) the price differential is unconstitutional in that it violates the constitutional guarantee of due process because its pricing requirements are too vague;
 

 (3) the price differential is unconstitutional in that it violates the equal protection guarantee by affording
 
 “
 
 special treatment ” to operators of vending machines;
 

 (4) the price differential is unconstitutional in that it is ‘ ‘ overbroad ’ ’;
 

 (5) the price differential is invalid because the Federal Government has pre-empted the field.
 

 We find these arguments to be without merit.
 

 A.
 
 THE CITY HAS THE POWER TO ENACT A PRICE DIFFERENTIAL
 

 Since the State has the authority under its police power
 
 to
 
 properly enact a price differential (see
 
 Nebbia
 
 v.
 
 New York,
 
 291 U. S. 502, 524-525, 531-532), the question is whether the State has, in any way whatsoever, authorized the city to enact such regulations. In the present case, such authorization must be found, if at all, in (1) the police power derived from constitutional, statutory, and charter provisions granting home rule to cities, or (2) the State enabling legislation concerning the cigarette tax itself.
 

 
 *105
 
 1.
 
 The City Police Power
 

 The “ home rule ” provision of the New York State Constitution provides in pertinent part as follows: “ [E]very local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such local law relating to other than the property, affairs or government of such local government: * * * (10) The government, protection, order, conduct, safety, health and well-being of persons or property therein.” (N. Y. Const., art. IX, § 2, subd. [c], [ii], [10].)
 

 The Municipal Home Rule Law reiterates this grant of power over matters relating to the health and well-being of inhabitants of the city and expressly adds,
 
 “
 
 This provision shall include but not be limited to the power to adopt local laws providing for the regulation or licensing of occupations or businesses ”. (Municipal Home Rule Law, § 10, subd. 1, [ii], a, [12].)
 

 The police power is also authorized by subdivision a of section 27 of the New York City Charter, which provides in pertinent part that the city council ‘ ‘ shall have power to adopt local laws as to it may seem meet, which are not inconsistent with the provisions of this charter or with the constitution or laws of the United States or of this state * * * for the preservation of the public health, comfort, peace and prosperity of the city and its inhabitants ”.
 

 The above provisions amply demonstrate that New York City has been granted the exercise of the police power to promote health by the sovereign people acting through the State Constitution and the State Legislature (see
 
 Good Humor Corp.
 
 v.
 
 City of New York,
 
 290 N. Y. 312). Assuming that an enactment is properly related to the power to promote health, this grant of authority has only two limitations placed upon it: (1) the city may not exercise its police power by adopting a local law which is inconsistent with constitutional or other general law; and (2) the city may not exercise its police power over health to the extent that the Legislature shall restrict the adoption of
 
 *106
 
 such local law (N. Y. Const., art. IX, §
 
 2;
 
 Municipal Home Rule Law, § 10, subd 1, [ii])._ There is no'contention here that the Legislature has restricted the city’s exercise of its general police power, For reasons which follow, we conclude that the purpose of the price differential is properly related to health, that the means employed is within the police power, and that the exercise of the police power in the present case is not inconsistent with any provision of the Constitution or other general law.
 

 That the challenged price differential was enacted for the purpose of promoting public health is conceded by both parties and-the regulations so state (see Cigarette Tax Law Regulations of New York City Finance Administrator, art. 2-A). Specifically, its purpose is to improve the public health by reducing the quantity of high tar and nicotine cigarettes smoked by the public. The link between smoking cigarettes with a high tar and nicotine content and poor health is widely and officially acknowledged. The means utilized to accomplish the health purpose, the challenged price differential, is reasonably related to the goal of reducing consumption of the more harmful high tar and nicotine brands, since it is intended to force a cigarette consumer to pay a higher retail price for the harmful cigarettes. It was not unreasonable for the city council to conclude that the higher prices required of the more harmful cigarettes would induce the cigarette consumer to switch to a less harmful variety, or at least smoke less of the more harmful brand. Accordingly, the price differential based on tar and nicotine content is clearly within the police power over matters pertaining to health. This conclusion is reinforced by the fact that cigarette tobacco is now recognized as a substance dangerous to public health and, as in the case of alcohol, this justifies greater legislative control (cf. 48 C. J. S., Intoxicating Liquors, §§ 20, 33).
 

 Since the State itself could properly require a price differential under its police power to regulate matters concerning health; since the State has granted a similar police power to the city; and since it is clear that the price differential has a reasonable relation to health; the conclusion follows that, in the absence of other valid objections, the price differential is a proper exercise of the police power by the city.
 

 
 *107
 
 This conclusion is in no way vitiated by the fact that the price differential undeniably regulates prices to a certain degree.
 
 [1]
 

 “
 
 [P]rice regulation is just another form of regulation to be gauged by its relation to the common weal.” (7 McQuillin, Municipal Corporations [3d ed., rev. 1968], § 24.397, at p. 357.) Municipalities in colonial boroughs fixed the price of certain foods (§ 24.397); and in modern times, though authority is sparse, the validity of price regulation by municipalities has been determined by the relation of the commodity or service controlled to a governmental interest which the municipality has the power to advance. (See 7 McQuillin, Municipal Corporations, § 24.397, cf. § 24.670; see, also,
 
 Pomeranz
 
 v.
 
 City of New York,
 
 1 Misc 2d 486, affd. 7 A D 2d 752 [changes in parking garage prices cannot be effective for at least 60 days after posting of old prices].)
 

 While we have been referred to no case, in this jurisdiction or another, which is precisely on point, the leading New York cases interpreting the police power of municipalities support the validity of municipal price regulation in certain instances. In
 
 Good Humor Corp.
 
 v.
 
 City of New York
 
 (290 N. Y. 312,
 
 supra),
 
 this court found invalid an “ anti-peddler ” ordinance passed under section 27 of the New York City Charter (the general police power) and a section of the City Home Rule Law (not here applicable). In discussing the Legislature’s grant of power to the city, the court stated (pp. 316-317): “ Under these statutes the city has broad power to regulate the use of the city streets [City Home Rule Law] and to provide by local law for * * * the preservation and promotion of the health, safety and general welfare of the inhabitants. Local laws are valid which have a substantial relation to matters within the field where legislative power is vested in the local legislative body of the city by the Constitution and the statutes of New York. They must be reasonably calculated to achieve a legitimate public purpose.” Under this test, the antipeddler ordinance
 
 *108
 
 was invalid because it was not passed for the purpose of advancing health or general welfare but rather, in the words of the city council, “ to prevent unfair competition by itinerant peddlers with storekeepers who pay rent and various taxes ”. Furthermore, it was not “ reasonably calculated ” to advance any other legitimate purpose which the city did have the power to effect (pp. 317-318).
 

 An application of this “ substantial relation to a legitimate, authorized purpose ” test to the price regulation in the present case compels a decision upholding its validity, since the regulation of prices by means of the differential requirement has a substantial relation to the health objective of reducing the amount of high tar and nicotine cigarettes smoked by city inhabitants.
 

 The test enunciated in the
 
 Good Humor
 
 case, and the reference to the broad powers granted to the city, where reaffirmed in
 
 People
 
 v.
 
 Lewis
 
 (295 N. Y. 42). In
 
 Lewis,
 
 a defendant challenged the constitutionality of a city ordinance which imposed penalties for the sale of commodities at a price above certain ceiling prices. These ceiling prices were set by the Federal Price Administrator. The enactment was challenged on the grounds,
 
 inter alia,
 
 that the city did not have the power to fix prices, and that the local law was inconsistent with previously enacted State law on the subject. The court upheld the ordinance.
 

 It appears very clear that the court rejected Lewis’ contention that “ There [was] * * * no power in the city to fix ceiling prices,” and accepted the city’s argument that the price fixing was a valid exercise of the police power (see 295 N. Y, at p. 46 [points of counsel]). The court stated that, if the enactment was consistent with State law, it had ‘ ‘ no doubt that such a law [was] within the field of legislative power of the city ” as defined in those provisions of the Constitution, statutes, and city charter granting the city the police power (295 N. Y., at pp. 49, 50). This holding is no less persuasive because the city adopted the Federal ceiling prices. There is no suggestion in the opinion that the city’s power was in any way dependent on the initial exercise by the Federal or State government, and whether the specific prices set originated in Washington, Albany, or Manhattan would appear irrelevant.
 

 
 *109
 
 Though the
 
 Lewis
 
 decision establishes that price regulation may be within the police power of the city, Cook argues that in the present case “ the New York City price differential requirement exceeds the City’s local police power for two distinct reasons: (1) it deprives sellers of cigarettes of the pricing flexibility which is expressly permitted by New York State law; and (2) it is not a response to any local problem unique to New York City.”
 

 On the first objection, Cook points out that selling cigarettes without a price differential is permitted under the State cigarette tax law. He then argues that a locality may not “ enact a local law which prohibits conduct which is permitted by State law.” This statement of the law is much too broad. If this were the rule, the power of local governments to regulate would be illusory. Any time that the State law is silent on a subject, the likelihood is that a local law regulating that subject will prohibit something permitted elsewhere in the State. That is the essence of home rule. A different situation is presented when the State has acted upon a subject, and in so acting has evidenced a desire that its regulations should pre-empt the possibility of varying local regulations. Under these circumstances a local law may be said to be inconsistent with State law because it prohibits something acceptable under the State law (e.g.,
 
 Wholesale Laundry Bd. of Trade
 
 v.
 
 City of New York,
 
 17 A D 2d 327, 18 A D 2d 968, affd. 12 N Y 2d 998). The State has not spoken through its own laws in relation to price differentials based on tar and nicotine content. The fact that the State also
 
 taxes
 
 cigarettes has no significant relation to the price-differential aspect of the city’s enactment, and therefore cannot be said to create an inconsistency.
 

 The appellant similarly misconstrues the law in his second objection. There is no requirement that a local law be a response to a uniquely local situation. If this were the rule, it would be impossible, for example, for each community to regulate the collection of its garbage, since obviously this problem is in no way unique. As correctly stated, the rule does not require that a local law be a response to a special local problem unless the local law is inconsistent with a general State law. "Where inconsistency with a general State law is shown, a local law will be upheld, despite the inconsistency, if there is a special local
 
 *110
 
 problem supporting the variance (see
 
 Robin
 
 v.
 
 Incorporated Vil. of Hempstead,
 
 30 N Y 2d 347, 351). “ This court has expressly declared that local health regulations — relating, for instance, to the manufacture and sale of food — may be enacted by a municipality, in spite of general State regulations, only if there exists ‘ a real distinction between the city and other parts of the State. They [local regulations] must be based upon special conditions existing in the city. ’ ’ ’ (Brackets in original.)
 

 Since the price differential is not inconsistent with a general State policy on the subject, there is no requirement that the problem remedied be based on peculiarly local conditions.
 

 The defendant-appellant’s objections being unpersuasive, we conclude on the basis of the relevant case law, and the applicable constitutional, statutory, and city charter provisions that the price differential imposed by the city is a proper exercise of the city’s police power as granted by the State.
 

 2.
 
 The State Enabling Statute
 

 Regardless of its police power, the city would have the power to impose the price differential if the specific legislation granting the city the power to tax cigarettes also granted the power to create a price differential.
 

 In opposition to the finding of such a power, defendant Cook relies on section 1 of article XVI of the Constitution,
 
 [2]
 
 and
 
 County Securities, Inc.
 
 v.
 
 Seacord
 
 (278 N. Y. 34) for the proposition that the delegation of the taxing power to a municipality must be express and cannot be inferred. From this unexceptionable proposition he argues that since the price differential was not expressly mentioned in the enabling grant, its imposition by the city is unauthorized. Neither of the cited authorities supports this conclusion.
 

 Section 1 of article XVI presents no difficulty since its two requirements have been satisfied: (1) the enabling statute specified that it was delegating to the city the power to impose a tax on the tar and nicotine content of cigarettes; and (2) the statute also provides for judicial review.
 
 County Securities
 
 held that a local law could not amend a city charter so as to
 
 *111
 
 provide for the collection of delinquent taxes by sale of the land assessed. The court found no authority for “ changing the method of collection of taxes provided for in the original charter and the general Tax Law ” (278 N. Y., at p. 38). In effect, the court found the local amendment inconsistent with general State policy as expressed in a general statute and a city charter. The case is not helpful in determining whether the enabling statute in the present case may be said to have authorized a price differential.
 

 We are persuaded for other reasons that the power to impose a price differential was included in the State enabling legislation: (1) the broad language used in the statute itself; and (2) the legislative intent, as evidenced by the explanatory memorandum on the 1971 amendment the city submitted to the Legislature and by the passage of the
 
 ‘
 

 [1]
 

 high tar ’ ’ tax itself.
 

 The enabling statute, chapter 235 of the Laws of 1952, authorized the city ‘ ‘ to adopt and amend local laws imposing * * * taxes on cigarettes
 
 such as the legislature has or would have the power and authority to impose.”
 

 [3]
 

 (Emphasis added.) That the State Legislature has the power to fix prices of commodities is well established. Thus, the State would have the authority, combining its taxing and police powers, to impose a tax requir
 
 *112
 
 ing price differentials based on tar and nicotine content. Since the imposition of a cigarette tax containing a price-differential feature is within the authority of the Legislature, and since the Legislature granted to the city power to impose any tax
 
 “
 
 such as the legislature has * * * [the] authority to impose,” it follows from the statute that the city has the power to impose a tax including a price-differential element. According to its words, the statutory grant of power embraces the full panoply of State power so long as the city exercises its grant in relation to a tax on cigarettes.
 

 With regard to the price differential at least, this broad reading is supported by the legislative history of the 1971 amendment. An explanatory memorandum on the amendment submitted by the city to the Legislature strongly suggests, while not expressly stating, that the purpose of the new tax was to creáte a difference in prices: “ The tax is directed specifically at elements in cigarettes that are responsible for massive individual and public health costs. As the tax is structured, smokers need not pay any tax if they switch to low tar and nicotine cigarettes. Cigarette manufacturers can reduce tar and nicotine content quickly, inexpensively, and without destroying cigarette taste. Market pressures induced by the tax may lead them to do so.” (N. Y. Legis. Annual, 1971, p. 391.) These statements clearly indicate that as a result of the new tax, consumers were expected to switch to low tar and nicotine cigarettes because they would not have to pay the additional tax. This expectation could not reasonably be entertained if the retailer were free to charge the same price for both high and low tar cigarettes regardless of the tax.
 

 With equal pricing, the consumer would still be paying the amount of the tax as dealer profit, and there would be no reason to expect a consumer switch. The defendant’s argument that the market pressure was to be created by
 
 ‘ ‘
 
 consumer education or through the impact of the additional City tax upon sellers’ profit margins ” fails to explain the memorandum’s clear suggestion that the market pressure was to be brought about by the consumer’s switching cigarettes to avoid payment of the additional tax.
 

 Also, as the city points out, the very act of passing a law which varies the amount of the tax imposed according to tar
 
 *113
 
 and nicotine content implies an intention to create an increase in prices of those cigarettes with the higher tax.
 

 Taking into consideration the broad power granted by the language of the State enabling statute, and interpreting that language in light of the Legislature’s intention in passing the 1971 amendment, we conclude that, in addition to the independent ground of the police power, the imposition of the price differential is within the city’s authority under the enabling statute.
 

 In sum, while the tax-revenue aspect of its legislation must necessarily be authorized by a specific grant of power contained in a State enabling statute, the city has alternate and independently sufficient grounds supporting the price-differential aspect, the police power over health, and the implied grant in the enabling statute.
 

 B.
 
 THE PRICE-DIFFERENTIAL REQUIREMENT IS NOT UNCONSTITUTIONALLY VAGUE
 

 Defendant Cook also contends that even if the city has the power to enact the price-differential requirement, the instant regulation is not a valid exercise of that power since it ‘ ‘ requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application ”.
 
 (Connally
 
 v.
 
 General Constr. Co.,
 
 269 U. S. 385, 391.)
 

 The language challenged as vague provides that “ the prices of all cigarettes subject to the additional [tar and nicotine] tax, sold in the City by vendors other than manufacturers, shall reflect a difference in price equivalent to the amount of the additional tax imposed ”
 
 [4]
 
 .
 

 
 *114
 
 In support of Ms claim of vagueness, Cook proffers mainly a hypothetical situation in wMch the price differential is claimed to produce an “ absurdly impractical result.”* ***
 
 [5]
 
 He then cites the testimony of the pertinent city officials as supporting the vagueness claim since their interpretations of the price-differential reqmrement varied under the facts of the hypothetical situation.
 

 While it is true that the application of the price differential is not clear in all situations, and is definitely puzzling in some,
 
 [6]
 
 it is also true that in a great many cases there is no ambiguity whatsoever. The instruction that the retail price “ shall reflect a difference in price equivalent to the amount of the additional tax imposed” is sufficiently clear in most of the factual situtions to which it may be applied. The difficulty encountered in the practical application of the price-differential requirement under certain facts does not necessarily rise to the. level of rendering the statute unconstitutionally vague. “ [I]f the general class of offenses to which the statute is directed is plainly
 
 *115
 
 within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise ”.
 
 (United States
 
 v.
 
 Harriss,
 
 347 U. S. 612, 618.)
 

 In any event, defendant Cook has neither alleged nor proved that there was any difficulty in ascertaining the proper retail prices under the price differential with respect to Winston and True, the brands which formed the basis of his conviction. Since Winston is a “ high tar ” cigarette, with a factory price identical to or (for “ Super ”) greater than True, it is difficult to imagine under what theory of the statute both could be sold at the same price. Thus the vagueness objection must fail as to Cook because “ one to whom application óf a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional. ”
 
 (United States
 
 v.
 
 Raines,
 
 362 U. S. 17, 21.) This rule is especially applicable where, as here, we are judging the vagueness of economic regulations with no first amendment overtones. (See, e.g.,
 
 United States
 
 v.
 
 National Dairy Corp.,
 
 372 U. S. 29;
 
 Yazoo & Mississippi R. R.
 
 v.
 
 Jackson Vinegar Co.,
 
 226 U. S. 217.)
 

 The price-differential requirement is not unconstitutionally vague; and we have examined the defendant’s other objections, and find them also to be without merit.
 
 [7]
 

 Accordingly, the order of the Appellate Term should be affirmed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Stevens concur.
 

 Order affirmed.
 

 [1]
 

 . While the price differential does not
 
 “
 
 fix ” prices in the usual sense, since there are no maximum or minimum prices, etc. required, once the price of a “high tar” cigarette is set by the retailer, the price differential does set a maximum price on the amount that can be charged for a correspondingly priced
 
 “
 
 low tar ” cigarette. Whether or not the price-differential element is labeled “ price-fixing ”, it definitely involves price regulation.
 

 [2]
 

 . Section 1 of article XVI provides in pertinent part: “Any laws which delegate the taxing power shall specify the types of taxes which may be imposed thereunder and provide for their review.”
 

 [3]
 

 . The enabling statute as amended in 1971 provides in pertinent part:
 
 “
 
 Section 1. (1) Notwithstanding any other provision of law to the contrary, any city of the state having a population of one million or more inhabitants acting through its local legislative body, is hereby authorized and empowered to adopt and amend local laws imposing in any such city taxes on cigarettes, cigars or smoking tobacco such as the legislature has or would have power and authority to impose. Such taxes may be collected and administered by the fiscal officers of such city by such means and in such manner as may be provided by such local laws.
 

 “
 
 (a) The basic rate of such tax on cigarettes shall not exceed two cents for each ten cigarettes or fraction thereof and is intended to be imposed only once on the same package of cigarettes; in addition to such tax there may be imposed an additional tax at the following rates
 

 “
 
 (1) One and one-half cents for each ten cigarettes where either their tar content exceeds seventeen milligrams per cigarette or their nicotine content exceeds one and one-tenth milligrams per cigarette;
 

 “ (2) Two cents for each ten cigarettes where their tar content exceeds seventeen milligrams per cigarette and their nicotine content exceeds one and one-tenth milligram per cigarette.” (L. 1952, eh. 235, as amd. by L. 1959, eh. 369, L. 1963, eh. 252, and L. 1971, ch. 394.)
 

 [4]
 

 . Article 2-A of the Cigarette Tax Law Regulations of the New York City Finance Administrator. The regulations include the following illustrations: “For example:
 

 “ (1) In the example in subdivision (b) above, [i.e., brand A incurs no additional tar tax; brand B, also 0 tax; brand C, 3 cents; brand D, 3 cents; brand Ej 3 cents; brand G, 4 cents] assume that the factory price is the same for .brands A, C, E, and G. Since brands C and E are each subject to the additional tax of 3 cents per pack, the sale prices of those brands to be charged by vendors other than manufacturers must be at least 3 cents higher than that charged for brand A, while the price of brand G, which is subject to additional tax of 4 cents per pack, must be at least 4 cents higher than brand A. * * *
 
 *114
 
 “ (2) In the example in subdivision (b) above, assume that the factory price is -the same for brands E and G. Since brand E is subject to the additional tax at 3 cents per pack, while brand G is subject to the additional tax of 4 cents-per pack, the price to be charged for a pack of brand G must be at least 1 cent higher than that charged for a pack of brand E.”
 

 [5]
 

 . Defendant’s hypothetical presents a cigarette retailer “who sold both ‘low tar’ and ‘high tar’ cigarettes at prices ranging from 400 to 600 a pack before the imposition of the price differential requirement. After the requirement is imposed, the retailer would have to raise the price of his 400 ‘high tar ’ cigarettes by
 
 24$
 
 (or 60%) in order to achieve a 40 differential -in resale price over the 600 ‘ low tar ’ cigarettes. This is an absurdly impractical result, but the retailer is left to guess whether it is required by the New York City price differential regulation.”
 

 The city responds that “ [t]he problem [defendant] envisages does not arise. The 400 high tar pack need not be raised 240 to reflect the tax. It need only be raised 40 above the dealer’s similarly priced 400 low tar cigarettes to 440. And we think any ordinary citizen would realize this.”
 

 [6]
 

 . The problems arise because the regulations do not make clear in all" situations what base price is to be used before the addition of the tax. The regulations are satisfactory where the cigarettes have the same factory price and prior to the enactment of the price differential had the same markup. However, the incorporation of such factors as the dealer’s prior prices, a variance in factory prices, and a variance in grade (e.g., regular, filter, and 100 millimeter) make the regulations ambiguous in application in certain situations.
 

 [7]
 

 . Treating- vending machines as a separate classification is reasonable; and the burden of proving selective enforcement was not met. The enactment is not “ overbroad ” factually because it cannot be said that the purpose of the price differential, the reduction in consumption of high tar cigarettes, could be as effectively accomplished by advertising or notice requirements. Legally, the effectiveness of the price differential is well within the bounds of rationality allowed to legislative bodies in enacting economic regulations. (See
 
 Wiggins
 
 v.
 
 Town of Somers,
 
 4 N Y 2d 215, 221.) The Federal Public Health Cigarette Smoking Act of 1969 (U. S. Code, tit. 15, § 1334, subd. [b]) applies to
 
 “
 
 advertising or promotion” and even if pre-emptive does not preclude a price differential or a requirement that prices be posted.