Vincent J. McArdle, Jr., Esq. Corporation Counsel, Albany
Your assistant corporation counsel has asked whether State law has preempted the enactment by a city of a local law prohibiting discrimination against individuals based on their sexual orientation.*
Also, he inquired whether the city may by local law expand the jurisdiction of its human rights commission to include consideration of allegations of discrimination due to sexual orientation.
All local governments are authorized to adopt and amend local laws, consistent with the Constitution and general State laws, in relation to the government, protection, order, conduct, safety, health and well-being of persons or property therein (NY Const, Art IX, § 2[c]; Municipal Home Rule Law, § 10[1][ii][a][12]). This is a broad grant of the police power to local governments (New York State Club Association, Inc. vCity of New York, 69 N.Y.2d 211 [1987]; People v Cook, 34 N.Y.2d 100, 105
[1974]). We believe that this broad grant of police power is sufficient authorization for the enactment of the proposed local law prohibiting discrimination based on sexual orientation.
There are, however, two firm restrictions on the exercise of this grant of power (New York State Club Association, supra, p 217; Cook, supra, pp 105-106). A local government, in this case a city, may not adopt a local law that is inconsistent with the Constitution or a general State law*
(ibid.). Second, the city may not exercise its police power when the State Legislature has indicated a purpose to preempt the field of regulation (ibid.; Con Ed v Town of Red Hook, 60 N.Y.2d 99 [1983]).
With regard to whether the State has preempted this area of regulation, denying the city authority to adopt a local law prohibiting discrimination on the basis of sexual orientation, the applicable criteria were discussed in Con Ed v Town of Red Hook, supra, p 105:
 "The intent to preempt need not be express. It is enough that the Legislature has impliedly evinced its desire to do so. (People v New York Trap Rock Corp., 57 N.Y.2d 371, 378; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 N.Y.2d 679, 683; People v Cook, 34 N.Y.2d 100, 109.) A desire to preempt may be implied from a declaration of State policy by the Legislature (Robin v Incorporated Vil. of Hempstead, 30 N.Y.2d 347, 350-351) or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area. (People v De Jesus, 54 N.Y.2d 465, 469.)"
Generally, Article 15 of the Executive Law prohibits certain persons and organizations from discriminating against individuals on the basis of age, race, creed, color, national origin, sex, disability or marital status (Executive Law, § 296). Also, a procedure has been established for the redress of allegations of discrimination beginning with the filing of complaints with the State Division of Human Rights (id., § 297). We believe that the State Legislature has clearly indicated its intent that Article 15 of the Executive Law does not preempt this area of regulation.
 "Nothing contained in this article shall be deemed to repeal any of the provisions of the civil rights law or any other law of this state relating to discrimination because of race, creed, color or national origin; but, as to acts declared unlawful by section two hundred ninety-six of this article, the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned" (id.,
§ 300).
Thus, other anti-discrimination laws have been preserved and protected. Once invoked, the procedures for redress of complaints under Article 15 are exclusive but section 300 of the Executive Law clearly preserves enforcement and remedies under other anti-discrimination laws if Article 15 procedures are not invoked (see also, Executive Law, §295[16]).
In a recent opinion, the Court of Appeals considered whether a local law of the City of New York, prohibiting discrimination in those private clubs assuming a sufficiently public character, was a valid and constitutional exercise of the police power (New York State ClubAssociation, supra). While the plaintiff conceded that the State has not preempted the field of anti-discrimination legislation by enacting the human rights provisions of the Executive Law (New York State ClubAssociation, supra, pp 217-218), Chief Judge Wachtler opined as follows:
 "As we have already noted, no pre-emption is claimed here or is discernable from the statutory scheme" (New York State Club Association, supra, p 222).
(See also, Under 21 v City of New York, 65 N.Y.2d 344, 356 [1985].) In our view, therefore, the provisions of Article 15 do not preempt the city's proposed local law.
Having concluded that there is authority for the proposed local law and that State law has not preempted the field, the final inquiry is whether the proposed local law is inconsistent with State law. The State Human Rights Law prohibits discrimination on the basis of age, race, creed, color, national origin, sex, disability or marital status (Executive Law, § 296). Thus, State law does not prohibit discrimination on the basis of sexual orientation. Were the city to enact the proposed local law, it would in effect be prohibiting behavior not expressly covered under the State law. First, as stated earlier, the State law expressly preserves other anti-discrimination laws (Executive Law, § 300). Further, where there is no preemption, the courts have specifically rejected as a test of "inconsistency" whether the local law prohibits what is not covered by State law (New York State Club Association,supra, pp 221-222; Cook, supra, p 109).
 "If this were the rule, the power of local governments to regulate would be illusory. Any time that the State law is silent on a subject, the likelihood is that a local law regulating that subject will prohibit something permitted elsewhere in the State. That is the essence of home rule. A different situation is presented when the State has acted upon a subject, and in so acting has evidenced a desire that its regulations should preempt the possibility of varying local regulations. Under these circumstances a local law may be said to be inconsistent with State law because it prohibits something acceptable under the State law" (Cook, supra, p 109).
In response to the first question, we conclude that the city is empowered to enact a local law prohibiting discrimination based on sexual orientation.
The second question is whether the city is authorized to enact a local law expanding the jurisdiction of the city's human rights commission to allow it to consider complaints of discrimination due to sexual orientation. Your office questions whether the provisions of the State General Municipal Law (Art 12-D) necessitate the adoption of a State law, upon a home rule request, to enact the proposal.
In our view, the city is empowered to enact the proposed local law. As stated earlier, the city possesses a broad grant of power to adopt and amend local laws, consistent with the Constitution and general State law, to further the government, protection, order, conduct, safety, health and well-being of persons or property therein (NY Const, Art IX, § 2[c]). The expansion of the human rights commission's jurisdiction to allow it to consider complaints of discrimination based on sexual orientation is within this grant of power.
The proposed local law is neither preempted by nor inconsistent with the provisions of Article 12-D of the General Municipal Law. We have found no indication in the State law of an intent to preempt local laws or establish an exclusive procedure for organization and operation of local human rights commissions. The General Municipal Law does not mandate local human rights commissions. It authorizes the governing board of a county, city, village or town to create a commission on human rights (General Municipal Law, § 239-o). If created, the governing body of the municipality determines the composition of the commission, the manner of appointment of members, the means of selecting the chairman and the compensation to be paid to the members (ibid.). We note also that section239-s of the General Municipal Law preserves the powers of the New York City Commission on Human Rights.
While the jurisdiction of a local human rights commission under State law does not encompass complaints of discrimination based on sexual orientation, for the reasons stated earlier this does not make the proposed local law inconsistent with State law (New York State ClubAssociation, supra, pp 221-222; Cook, supra, p 109). In any event, Article 12-D of the General Municipal Law takes effect only in those municipalities that opt to apply its provisions. Also, an exception has been established for New York City (General Municipal Law, § 239-s). Thus, Article 12-D is not a general law under the home rule definition (Johnson v Etkin, 279 N.Y. 1 [1938]; see fn, infra, p 111). Local laws need only be consistent with the Constitution and general State laws.
We conclude that a city is empowered to enact a local law prohibiting discrimination based on sexual orientation. A city may by local law expand the jurisdiction of its human rights commission to allow it to consider allegations of discrimination based on sexual orientation.
* "Sexual orientation" is defined by the proposed local law transmitted to us to mean heterosexuality, homosexuality, bisexuality and asexuality.
* A general law is a State law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages (NY Const, Art IX, § 3[d][1]).