Ilan S. Schoenberger, Esq. County Attorney, Rockland
You have asked whether a county has authority to enact regulations protecting mobile home owners by providing that they may be evicted only for good cause, and protecting their right to purchase and sell their homes. You raise several questions as to the relationship between any local law regulating this area and section 233 of the Real Property Law, which regulates mobile home parks at the State level.
First, you inquire whether section 233 preempts such a local law or whether a local law would be inconsistent with its provisions.
Local governments are authorized to adopt and amend local laws consistent with the Constitution and general State laws in relation to the government, protection, order, conduct, safety, health and well-being of persons or property therein (NY Const, Art IX, § 2[c]; Municipal Home Rule Law, § 10[1][ii][a][12]). This grant has been characterized as conferring broad police powers upon local governments (Jancyn Mfg. vSuffolk County, 71 N.Y.2d 91, 96-97 [1987]; NYS Club Assn. v City of NewYork, 69 N.Y.2d 211, 217 [1987], affd 108 S Ct 2225 [1988]). We believe it is clear that this broad empowerment is sufficient to authorize the enactment of the proposed local law conferring certain rights upon mobile home owners.
There are, however, two restrictions on the exercise of this grant of power (ibid.). A local government may not adopt a local law that is inconsistent with the Constitution or a general State law* (NY Const, Art IX, § 2[c]; Municipal Home Rule Law, §10[1][ii][a][12]). Second, a local government may not exercise its police power when the State Legislature has indicated a purpose to preempt the field of regulation (Jancyn, supra; NYS Club Assn., supra). The applicable criteria for determining preemption were discussed in Con Ed vTown of Red Hook, 60 N.Y.2d 99, 105 (1983):
 "The intent to preempt need not be express. It is enough that the Legislature has impliedly evinced its desire to do so. (People v New York Trap Rock Corp., 57 N.Y.2d 371, 378; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 N.Y.2d 679, 683; People v Cook, 34 N.Y.2d 100, 109.) A desire to preempt may be implied from a declaration of State policy by the Legislature (Robin v Incorporated Vil. of Hempstead, 30 N.Y.2d 347, 350-351) or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area. (People v De Jesus, 54 N.Y.2d 465, 469.)"
There is no declaration of policy by the Legislature in section233 of the Real Property Law indicating a desire to preempt regulation of the relationship between mobile home tenants (defined in Real Property Law, § 233[a][1]) and mobile home park owners. Additionally, there is no evidence of an implied desire to preempt this area. In section 233 there are several references to existing local laws regulating the relationship between mobile home park owners and their tenants (id., § 233[n][1][a] and [b]). In fact, only one provision of section 233 includes precatory language indicating that the regulations apply notwithstanding the provision of any local law to the contrary (id., § 233[d][3]). Presumably, if the Legislature in enacting this consumer protection legislation had sought preemption, it would have applied such restrictive language to section 233 in its entirety. Nor do we view section 233 as a comprehensive statutory scheme regulating the relationship between mobile home owners and park owners. The conclusion follows that section 233 does not preempt a local law regulating mobile home parks.
The question whether a local law would be inconsistent with section 233 requires a review of the regulations you might include in such a local law compared with relevant provisions of State law. Your letter generally describes regulations you might include in a local law (hereafter referred to as "proposed local regulations").
A local law is inconsistent with a State law where there is an express conflict between the State and local laws (NYS Club Assn., supra, p 217;Jancyn, supra, pp 96-97). The courts have specifically rejected as a test of inconsistency whether a local law prohibits behavior permissible under State law (NYS Club Assn., supra, pp 221-222; People v Cook, 34 N.Y.2d 100,109 [1974]). "If this were the rule, the power of local governments to regulate would be illusory" (Cook, supra, p 109).
As noted earlier, the proposed local regulations cover two specific areas — grounds for eviction and the right of mobile home owners to purchase and sell their homes. Under the State law, a mobile home park owner or operator may not evict a mobile home tenant (including both home owner and home renter) except for specified reasons, including the fact that the mobile home tenant continues in possession of any portion of the premises after the expiration of his term without the permission of the park owner or operator (Real Property Law, § 233[b][1]). You have explained that under the proposed local regulations, a mobile home owner may not be denied a continuance or renewal of his lease merely because the lease has expired. However, the owner remains free to change the use of the land, thereby requiring removal of mobile homes, although not during the lease term. Moreover, a mobile home owner may be evicted under the proposed local regulations if he has failed to comply with the terms of his lease or the rules and regulations of the park.
First, we believe that local laws may properly modify the grounds for eviction so long as such modifications are consistent with State law. Here, State law does not preclude eviction at the end of a lease but neither does it affirmatively make a grant of authority. Indeed, the right to evict under section 233 upon the expiration of the lease term is not unlimited. A mobile home park owner may not evict a tenant in retaliation for a good faith complaint by the tenant to a governmental authority alleging a violation of any health or safety law or for actions taken by the tenant to secure rights under the lease or rental agreement or under provisions of law regulating a premises for dwelling purposes (Real Property Law, § 233[n][1][a] and [b]). Nor may a park owner retaliate on account of a tenant's participation in a tenants' association (id., § 233[n][1][c]). Also, a park owner may not evict a tenant or refuse to renew a lease for discriminatory reasons (Executive Law, § 296).
Moreover, section 233 of the Real Property Law is referred to as "The Mobile Home Owners Bill of Rights" (Bill Jacket, L 1974, ch 973, May 20, 1974 letter from Senator Leon E. Giuffreda to Michael Whiteman, Counsel to the Governor, re: Assembly Print # 31031). The proposed local regulations, which would redefine the relationship between the mobile home owner and the mobile home park owner, regarding eviction, to further the rights of mobile home owners, has the same objective and accomplishes that objective consistent with the State law. You have indicated that the proposed local regulations are prompted by the low vacancy rates in mobile home parks in Rockland County together with the shortage of affordable and decent housing for persons of modest means. Under these circumstances, the unique status of a person who owns a mobile home but must rent space in a park establishes a precarious situation in the event of eviction.
By their terms, the proposed local regulations seek to protect the mobile home owner from arbitrary eviction while ensuring that park owners may terminate tenants who have violated leases or park rules. This provision of the proposed local regulations furthers the purposes of section233 of the Real Property Law by affording additional protection to mobile home owners in response to local conditions demanding stronger protection. The proposed local regulations consider the rights of park owners by adding provisions to protect their business interests and their rights to use their property as they desire. Park owners are not prohibited from changing the use of their land, provided that mobile home owners are afforded notice. This provision protects the property rights of park owners.
We believe that this realignment of rights and responsibilities is reasonable and is not inconsistent with the provisions of State law. InAdler v Deegan, 251 N.Y. 467 (1929), Chief Justice Cardozo characterized local laws that would be consistent with State laws exercising the police power (id., concurring opn 251 N Y at 485-486). Local regulations can be adopted to add additional protections, as long as they are not inconsistent with the laws of the State (ibid.).
 "The concern of the State to protect the health and welfare of its inhabitants may not stand in the way of action by the city consistent with the ends envisaged by the State, but adding greater safeguards with reference to related ends that are municipal or urban" (ibid.; see also, Jancyn, supra; People v Lewis, 295 N.Y. 42 [1945]).
The proposed local regulations clearly fall within these parameters. Further, the inclusion of provisions in the local regulations that are substantively identical to provisions of section 233 pose no legal problem.
The remaining provisions of the proposed local regulations governing eviction are also consistent with section 233 of the Real Property Law. The State law provides for termination of eviction proceedings for nonpayment of rent upon the acceptance of rent by the park owner (Real Property Law, § 233 [b][2]), whereas the proposed local regulations provide for termination of the proceeding upon the tender of rent. We believe that the State law must be construed so that the park owner may not unreasonably refuse to accept rent and, therefore, find that the two provisions are consistent. The proposed local regulations parallel the provisions of the State law in authorizing eviction upon failure within ten days to correct a violation of a lease term or rule or regulation established by the mobile home park owner but adds an additional provision (Real Property Law, §233[b][5]). You informed us that the proposed local regulations provide that if the violation is of such a nature that it cannot reasonably be remedied within a ten-day period, commencing to cure the default within the ten-day period and diligently proceeding to completion is an affirmative defense in any proceeding to evict. This additional protection afforded to the mobile home owner furthers the purposes of State law and, therefore, is not inconsistent with its provisions. The proposed local regulations also authorize the park owner to evict a mobile home owner who is persistently late in the payment of rent. In so doing, this provision helps to define a "persistent violator" under section 233(b)(5) of the State law and appears to be fully consistent with that provision.
The second area covered by the proposed local regulations deals with the right of the mobile home owner to possess and sell his home in the park. The proposed local regulations provide that a mobile home park owner may not require the removal of a home or an increased rental for a home solely on account of its age, size and/or model type. This is a subject that is not specifically covered under the State Law. As we indicated earlier, the courts have specifically rejected as a test of inconsistency whether a local law prohibits what is permitted (State law silent) by State law.
You informed us that the proposed local regulations provide that the park owner may reserve the right to approve the purchaser of a mobile home from a tenant in the park but provide that approval shall not unreasonably be withheld. This differs from section 233(i)(1) of the Real Property Law which provides that approval of the purchaser is only for the remainder of the lease term. This provision of the proposed local regulations follows from the related right of a mobile home owner to have his lease renewed provided that he was not in violation of lease provisions and the rules of the park. The proposed local regulations confer the same rights upon a purchaser who becomes a tenant in the park. This provision also seeks to remove a substantial impediment to the home owner's ability to sell his home. The proposed local regulations balance this grant of rights to the mobile home owner by specifically conferring upon the park owner the right to obtain credit information regarding a proposed purchaser. These provisions are part of the local purpose to further protect the rights of mobile home owners and, therefore, are consistent with State law.
The proposed local regulations strengthen the remedy for a mobile home owner if the park operator has acted in bad faith in withholding approval of a proposed purchaser (see Real Property Law, §233[i][1]). A local law establishing a more severe penalty than State law is not inconsistent with the State Law (People v Lewis,supra).
The proposed local regulations provide that a park owner may not withhold approval of a sale by a tenant of a mobile home by refusing or imposing a fee to sign an agreement with a lending institution for the prospective purchaser. This is an area that is not covered by section 233
of the Real Property Law and, therefore, there is no basis for a finding of inconsistency.
The proposed local regulations prohibit a park owner from requiring a mobile home owner or prospective owner to purchase his or her mobile home from the park owner or from persons designated by the owner. Once again, this is an area that is not covered under current section 233
of the Real Property Law and, therefore, there is no basis for a finding of inconsistency.
These local regulations would grant to mobile home owners additional legal rights.
You also have raised the question whether the proposed local regulations are invalid in that they regulate the economic rights of mobile home owners and mobile home park owners. Most local laws exercising the police power will have an economic impact. If the purpose of the local law is to protect the health, safety and welfare as opposed to regulating the economic interests of persons covered, it is a valid exercise of the police power (Good Humor Corp. v City of New York, 290 N.Y. 312 [1943]).
You also have asked whether the proposed local regulations can be viewed as an implementation of the Emergency Tenant Protection Act (Unconsolidated Laws, §§ 8621, et seq.) by the county. You are concerned because if the proposed local regulations are so construed, the county would be acting in excess of its authority in that the Emergency Tenant Protection Act's provisions can only be applied in a city, town or village.
We do not consider the proposed local regulations to be an implementation of the Emergency Tenant Protection Act. The purpose of that Act is to permit the regulation of rents for all or any class of housing upon the declaration of a public emergency based upon a finding that vacancies for such housing accommodations are below a certain level. The proposed local regulations do not fall into this arena.
Finally, you have asked whether the county has authority to supersede provisions of section 233 of the Real Property Law and, if so, you ask what is the proper vehicle for supersession. It is unnecessary for us to consider this question in that we have found that the proposed local regulations are consistent with section 233 of the Real Property Law.
We conclude that the proposed local provision of additional rights to mobile home owners in mobile home parks is a valid exercise of the police power and is consistent with the provisions of State law.
* A general law is a State law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns, or all villages (NY Const, Art IX, § 3[d][1]).