Marilyn J. Slaatten, Esq. Informal Opinion County Attorney No. 96-5 County of Westchester Michaelian Office Bldg. Rm. 600 148 Martine Avenue White Plains, N Y 10601
Dear Ms. Slaatten:
You have asked whether the county is authorized to enact a local law mandating that municipal police departments within the county report bias-related incidents to the county's commissioner of the Department of Public Safety.
For purposes of this reporting requirement, the county would define a bias-related incident as an offense or unlawful act, which after investigation by law enforcement agencies, is or appears to be motivated all or in part by race, ethnicity/ national origin, religion, sexual orientation, gender, age or disability. You have advised us that the county legislature's Committee on Legislation has found that bias-related crime incidents appear to have increased within Westchester County in recent years and pose a threat to the safety and lives of county residents, impact on the quality of life within the county, and threaten the fabric of society.
The Committee on Legislation specifically has defined two purposes to be served by the proposed legislation. First, dissemination of statistics gathered by county government may help communities to determine whether there are bias crime problems that require attention. Presumably, the county would gather information on the commission of bias crimes, which would be made available to police departments in municipalities throughout the county in order to promote law enforcement. Patterns of bias crimes and repetitive behavior by individuals could be viewed on a county-wide basis. The gathering of this information and its dissemination among police departments would allow cooperation among the various law enforcement agencies in the county, and may provide a useful tool for law enforcement.
Second, the Committee on Legislation has stated that the evaluation of statistics gathered at the county level will help determine whether there is a need for statutory amendment of the Penal Law and/or establishment of more severe penalties for bias-related incidents. The availability of this information will allow county officials, if warranted, to determine whether they wish to promote State legislative action.
Local governments, including counties, are authorized to adopt and amend local laws, consistent with the Constitution and general State laws, in relation to the government, protection, order, conduct, safety, health and well-being of persons or property therein. N Y Const Art IX §2(c); Municipal Home Rule Law § 10(1)(ii)(a)(12). This is the broad grant of police power to local governments. New York State ClubAssociation, Inc. v. City of New York, 69 N.Y.2d 211 (1987); People v.Cook, 34 N.Y.2d 100, 105 (1974). In our view, the proposed local law falls within this grant of authority.
There are, however, two basic restrictions on the exercise of home rule power by a local government. A local law may not be inconsistent with the Constitution or a general State law. Second, a municipality may not exercise its police power in an area that has been preempted by State law. New York State Club Association, supra, p 217. An intent to preempt may be found from either a declaration of State policy by the Legislature or from the enactment of a comprehensive and detailed regulatory scheme in a particular area. Incorporated Village of Nyack v. Daytop Village,Inc., 78 N.Y.2d 500 (1981). Where the State Legislature has preempted an entire field, a local law regulating the same subject matter is inconsistent with the State's interests if it either (1) prohibits conduct which the State law accepts or at least does not specifically proscribe or (2) imposes restrictions beyond those imposed by State law.Vatore v. Consumer Affairs, 83 N.Y.2d 645, 649 (1994).
While in prior opinions we have concluded that provisions of the Penal Law are preemptive (see, Informal Opinion No. 90-77), in our view the mandatory reporting of bias-related crimes is not a subject which falls within the Penal Law's preemptive coverage. The extent of the Penal Law's current regulation in this area is the establishment of several specific bias-related crimes.
Under section 240.30(3) of the Penal Law, a person is guilty of aggravated harassment in the second degree when with intent to harass, annoy, threaten, or alarm another person, he or she strikes, shoves, kicks, or otherwise subjects another person to physical contact or attempts or threatens to do so because of the race, color, religion, or national origin of the person. Aggravated harassment in the second degree is a class A misdemeanor.
A person is guilty of aggravated harassment in the first degree when with intent to harass, annoy, threaten, or alarm another person because of the race, color, religion, or national origin of that person he or she damages premises primarily used for religious purposes, or acquired under the Religious Corporation Law and maintained for purposes of religious instruction, and the damage exceeds $50; or commits the crime of aggravated harassment in the second degree under subdivision 3 of section240.30 of the Penal Law and has previously been convicted of that crime under section 240.30(3), or has previously been convicted of the crime of aggravated harassment in the first degree within the preceding ten years. Aggravated harassment in the first degree is a class E felony. Penal Law § 240.31. See also, Article 4 of the Civil Rights Law.
Under section 240.21 of the Penal Law, a person who makes unreasonable noise or disturbances while at a lawfully assembled religious service or within 100 feet of the service, with intent to cause annoyance or alarm or recklessly creating a risk thereof, is guilty of aggravated disorderly conduct. Aggravated disorderly conduct is a class A misdemeanor.
We note that the New York State Division of Criminal Justice Services requests that law enforcement agencies report bias-related incidents on a voluntary basis.[1] The Program maintains a database capable of receiving, processing, and analyzing reports from all law enforcement agencies in the State. This information is available to law enforcement, State Executive, and Legislative Branch policy makers and private non-profit organizations. The Program also serves as a general resource center on other issues relating to bias offenses. Division of Criminal Justice Services, Office of Justice Systems Analysis Bulletin, August 1991.
As is clear from the county legislature's (Committee on Legislation) statement of legislative intent, the purpose of the proposed county legislation is separate and distinct from the Penal Law's coverage of this area. The local law would not modify or create any additional crimes. It is proposed as a mechanism to promote improved and more efficient law enforcement and a means to assess whether current State law offers an adequate response to bias crime in the county. Thus, the Penal Law does not preempt the proposed county legislation. Nor do we find that the county's proposed local law would be inconsistent with any general State law. Reiterating, the Penal Law does not regulate with respect to this subject matter and the New York State Division of Criminal Justice Services' incident reporting program is purely voluntary and is not the subject of any specific State legislation. See, Executive Law §837(4)(a).
Where there is no design to preempt a field of regulation, local governments have been afforded latitude in exercising their police power to establish additional and greater protection. Vatore v ConsumerAffairs, supra; New York State Club Association, supra. In the absence of preemption, the courts have specifically rejected as a test of "inconsistency" whether a local law regulates in a subject area that is not covered by State law.
 If this were the rule, the power of local governments to regulate would be illusory. Any time that the State law is silent on a subject, the likelihood is that a local law regulating that subject will prohibit something permitted elsewhere in the State. That is the essence of home rule. A different situation is presented when the State has acted upon a subject, and in so acting has evidenced a desire that its regulations should preempt the possibility of varying local regulations. Under these circumstances a local law may be said to be inconsistent with State law because it prohibits something acceptable under the State law.
People v. Cook, supra, 34 N.Y.2d at 109; see also, Jancyn Mfg. Corp. v.County of Suffolk, 71 N.Y.2d 91, 97-99 (1987).
In sum, the county's proposed local law is neither preempted by nor inconsistent with any State laws. The statement of local legislative intent, in our view, establishes a rational basis for the exercise of the police power to require reporting of bias-related crimes.
We conclude that the county is authorized to consider enacting a local law to require that municipal police departments within the county report bias-related incidents to the county's commissioner of the Department of Public Safety.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Attorney General in Charge of Opinions
cc: Hon. Jeanine Pirro
District Attorney
Westchester County
[1] The primary objective of the Bias Crime Incident Reporting Program is to collect and report current information that can assist law enforcement agencies and policy makers in understanding the scope and nature of bias offenses. The ultimate goal is improvement in planning and executing effective apprehension, investigation, and prevention programs for bias-related incidents. Law enforcement agencies receive training in the identification, investigation, classification, and reporting of bias-motivated crime from the Division's Bureau for Municipal Police and the Bureau of Statistical Services. Members who have received training provide the Division with a monthly report which includes the type of crime; the type of bias (whether motivated by bias against race, religion, ethnicity/national origin, or sexual orientation); victim and offender characteristics (age, sex, race, and ethnicity); and the current status of the case.