OPINION OF THE COURT
Kaye, J.
In March, 1978, after more than a year of preliminary investigation, plaintiff, Consolidated Edison, announced that its engineers had recommended two sites in the mid-Hudson region for new major power plant facilities. One of the proposed sites was partly within the Town of Red Hook. In swift response to the announcement, defendants, the Town of Red Hook and its town board, in May, 1978 enacted Local Law No. 2, requiring a license from the town board to begin a site study. License applicants were required to pay a fee and submit detailed data, and their applications could in any event be rejected if their contemplated activities were detrimental to town property, residents, wild life or ecology, or simply inconsistent with the town’s land use plan and zoning regulations.
The question on this appeal is whether Local Law No. 2 is invalid, either because the State Legislature, by article VIII of the Public Service Law, has pre-empted the field of regulation concerning the siting of major steam power plants, or because the local law is inconsistent with the State statute. The issue arises in the context of an action for a judgment declaring Local Law No. 2 invalid insofar as it applies to major steam electric generating facilities as that term is defined in the Public Service Law, and enjoining defendants from enforcing the local law.
*103 I
Article VIII of the Public Service Law (“Siting of Major Steam Electric Generating Facilities”), enacted in 1972,[1] sets up a State board on electric generation siting and the environment (the Siting Board), which must certify all new major steam electric generating facilities. Generally, article VIII provides that all interests involved in the decision as to where such facilities should be located (including the interests of localities such as Red Hook) are to be balanced by one decision-maker, the Siting Board, in one proceeding, an application before that board. Specifically, the statute provides that no person is to prepare a site for or construct a major steam electric generating facility without obtaining a certificate from the board (Public Service Law, § 141); that a person proposing to apply for a certificate may consult with State agency staffs as to preapplication procedures, including studies of prospective sites (Public Service Law, § 141-a); that a detailed application must be filed with the Siting Board, describing the proposed site, the proposed facility, and studies conducted on the site (Public Service Law, § 142); that the Siting Board will conduct a hearing on an application at which various interests, including those of municipalities, may be represented (Public Service Law, §§ 143-145); that the board will render a final decision and issue an opinion stating the reasons for any action taken (Public Service Law, §§ 146-147); that an aggrieved party may apply for rehearing or judicial review (Public Service Law, §§ 148-149); and that no municipality may require any approval or other condition for the construction or operation of a major steam facility where an application for a certificate has been filed (Public Service Law, § 149-a).
Under defendants’ Local Law No. 2 (“Power Plant Site Study Law of the Town of Red Hook”), no person can begin or allow a site study for a power plant within the Town of Red Hook without first obtaining a license from the town board. An applicant must pay a fee and, pursuant to subdivision (A) of section 5, submit a detailed application *104 including information related to the proposed site study and operating facility, and the effect of each upon property values. Even if such information requirements are satisfied, however, in section 6 the town reserves the unfettered right to deny the application where the activities contemplated by the applicant are “detrimental to the affected properties, landowners, residents * * * wild life and the general ecology of the proposed site area to be studied,” or are “inconsistent with, the overall comprehensive plan for land use previously formulated by the town and its current zoning law and regulations.”
II
On plaintiff’s motion for summary judgment, Special Term found the local law a valid exercise of the town’s authority under the New York State Constitution and the Municipal Home Rule Law, and the Appellate Division affirmed.[2] Both courts relied for their conclusion on section 149-a of the Public Service Law, reasoning that, since section 149-a only precludes a municipality from imposing conditions on the construction or operation of a major steam facility with respect to which an application for a certificate has been filed, the regulatory scheme of article VIII does not come into play until an application is actually filed with the Siting Board.
We do not agree that this mechanical division can be made.
As applied to site studies for major steam electric generating plants, Local Law No. 2 is invalid for two reasons. First, it imposes, an additional layer of regulation in an *105 area where the Legislature has evidenced its intent to preempt the field of regulation. Second, it is inconsistent with article VIII of the Public Service Law, a general law. While these two infirmities are often interrelated, each is in itself a sufficient basis for invalidating a local law (Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 255), and each is applicable here.
Ill
Local Law No. 2 is invalid because the Legislature has pre-empted such local regulation in the field of siting of major steam electric generating plants. The intent to preempt need not be express. It is enough that the Legislature has impliedly evinced its desire to do so. (People v New York Trap Rock Corp., 57 NY2d 371, 378; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d 679, 683; People v Cook, 34 NY2d 100, 109.) A desire to preempt may be implied from a declaration of State policy by the Legislature (Robin v Incorporated Vil. of Hempstead, 30 NY2d 347, 350-351) or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area. (People v De Jesus, 54 NY2d 465, 469.) Here both apply.
In its declaration accompanying the original enactment of article VIII, the Legislature stated that the existing practice of un-co-ordinated regulation had resulted in “delays in new construction and increases in cost which are eventually passed on to the people of the state in the form of higher utility rates”, and that “there is a need for the state to control determinations regarding the proposed siting of major steam electric generating facilities within the state”. (L 1972, ch 385, § 1.) The purpose of article VIII was expressly “to provide for the expeditious resolution of all matters concerning the location of major steam electric generating facilities presently under the jurisdiction of multiple state and Ideal agencies, including all matters of state and local law, in a single proceeding”. (L 1972, ch 385, § 1.) In approving the bill, Governor Rockefeller noted that “the establishment of a unified certificating procedure under the jurisdiction of the new State Board” was to “replace the current uncoordinated welter of approvals, procedures and agencies that have virtually paralyzed the *106 construction of needed new power plants.” (McKinney’s Session Laws of NY, 1972, p 3391.)
When article VIII was re-enacted in 1978, the Legislature again asserted that its purpose was to have the Siting Board balance all interests, including local interests, on a State-wide basis in a single proceeding. (L 1978, ch 708, § 1.) In approving re-enactment of article VIII, Governor Carey stressed the importance of a “one-stop certification” procedure, to expedite the licensing process yet insure maximum public participation in the determination of steam facility siting. (McKinney’s Session Laws of NY, 1978, p 1838.)
This purpose is further reflected in the provisions of article VIII, which reach beyond the date an application is filed and beyond the Siting Board. Prospective applicants are encouraged to consult State agency staffs regarding preapplication site studies (Public Service Law, § 141-a). Applicants are instructed to request exceptions or variances from municipal regulations (Public Service Law, § 142, subd 1, par [c]). The Siting Board is required to determine whether any municipal laws or regulations governing the construction or operation of a proposed generating facility are unreasonably restrictive, and has the power to waive compliance with such municipal regulations (Public Service Law, § 146, subd 2, par [d]). Legislative intent to pre-empt further regulation is also borne out by the detailed nature of the regulatory scheme under article VIII and the regulations promulgated thereunder (16 NYCRR parts 72-80), which require information to be gathered in carefully prescribed site studies prior to the filing of an application.
Thus, the history and scope of article VIII, as well as its comprehensive regulatory scheme, evidence the Legislature’s desire to pre-empt further regulation' in the field of major steam electric generating facility siting, a desire that would be frustrated by laws such as Local Law No. 2.[3] “Such State policy being expressed, a village or other *107 municipality lacks authority to deal with the matter ‘ “unless it is specifically empowered so to do in terms clear and explicit.” ’ ” (Robin v Incorporated Vil. of Hempstead, 30 NY2d 347, 350-351, supra; Jewish Consumptives’ Relief Soc. v Town of Woodbury, 230 App Div 228, 234, affd 256 NY 619.) There has been no such authority delegated to defendants to ignore the State policy here. In light of this pre-emption, defendants had no power to adopt additional requirements or require additional permits relating to such siting. (Matter of Kress & Co. v Department of Health, 283 NY 55, 59.)
IV
Even if the Legislature had not pre-empted the field of regulations, defendants’ authority to enact local laws under the Constitution or the Municipal Home Rule Law is conditioned on the exercise of such authority not being inconsistent with any State enactment. (People v De Jesus, 54 NY2d 465, 468, supra; McMillen v Browne, 14 NY2d 326, 331.) Here, the provisions of Local Law No. 2 affecting power plant studies are inconsistent with article VIII of the Public Service Law, which is a general law relating to matters of substantial State concern. (Cf. County of Orange v Public Serv. Comm., 39 AD2d 311, 317, affd 31 NY2d 843.) Therefore, Local Law No. 2 is invalid for the additional reason that it is inconsistent with State law.
Preliminary site studies are necessary for an application to be made under article VIII. Section 142 of the Public Service Law requires that an application to the Siting Board contain information and materials relating to the site and the facility to be built thereon, including studies which have been made of the expected environmental impact and safety of the facility, during both its construction and its operation. The regulations implementing section 142 contain further exacting information requirements that call for prescribed studies to be undertaken before an application for a certificate under article VIII can be filed. (16 NYCRR parts 72-80.)
Local Law No. 2, which adds further restrictions to an applicant’s ability to conduct the site studies required by article VIII and — most significantly — allows the town to *108 prohibit such studies altogether, is inconsistent with State law. Inconsistency is not limited to cases of express conflict between State and local laws. (People v De Jesus, 54 NY2d 465, 468, supra.) It has been found where local laws prohibit what would be permissible under State law (Wholesale Laundry Bd. of Trade v City of New York, 17 AD2d 327, 329-330,18 AD2d 968, affd 12 NY2d 998, on opn at 17 AD2d 327), or impose “prerequisite ‘additional restrictions’ ” on rights under State law (F. T. B. Realty Corp. v Goodman, 300 NY 140, 147-148), so as to inhibit the operation of the State’s general laws. (Matter of Marcus v Baron, 57 NY2d 862; Floyd v New York State Urban Dev. Corp., 33 NY2d 1, 7.) Local Law No. 2 is by these standards inconsistent with State law and therefore invalid.
V
Defendants have, in effect, arrogated to themselves the power to determine, solely on the basis of local concerns, whether the site studies required for facilities within article VIII of the Public Service Law can be conducted. Local Law No. 2, and laws like it, would enable local communities to keep applications for major steam electric generating facilities from ever being filed with the Siting Board. This they cannot do. Once the Legislature has set down the factors to be considered in determining the siting of proposed major steam electric generating facilities and the forum where such determinations are to be made, defendants cannot by local law abort that plan.
In view of our conclusion that the provisions of section 6 of Local Law No. 2 allowing defendants to prevent power plant site studies are invalid when applied to site studies for major steam electric generating facilities, it is unnecessary to entertain plaintiff’s further arguments that the few remaining provisions of Local Law No. 2, relating to fees and information requirements, are also invalid. There is no basis for severing such provisions and the law as a whole must be declared invalid when applied to studies contemplated by article VIII of the Public Service Law. (F. T. B. Realty Corp. v Goodman, 300 NY 140,148, supra; Matter of McCabe v Voorhis, 243 NY 401, 416.)
For the reasons stated above, the order of the Appellate Division should be reversed, with costs to appellant, those *109 portions of Local Law No. 2 not previously invalidated declared invalid as applied to siting studies for major steam electric generating facilities under article VIII of the Public Service Law, and defendants enjoined from enforcing those provisions with respect to such studies.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
Order reversed, with costs, and judgment granted in favor of plaintiff in accordance with the opinion herein.

. Section 8 of chapter 385 of the Laws of 1972 provided that article VIII would expire on January 1, 1979. In August, 1978, the Public Service Law was amended by adding a new article VIII, which was essentially similar to its predecessor. (L 1978, ch 709, § 2.)

. While the local law was upheld below, certain portions of subdivision (A) of section 5 were stricken. As enacted, subdivision (A) of section 5 required an applicant to provide the town board with 25 categories of data relating to the applicant’s contemplated power plant and the impact its activities might have on the town", to justify its selection of the town as the potential site, and to demonstrate that areas closer to the applicant’s service territory were not better suited for the project.
Special Term found 20 of the 25 information requests to be invalid as lacking in “requisite rationality” and “inconsistent with State policy.” As so limited, subdivision (A) of section 5 requires an applicant to provide the town board with a map of the area in which site studies will be conducted, a time schedule for the studies, and a detailed listing of the specific studies that will be conducted in each area, to procure liability insurance for any damage to private property caused by the site studies and to name the Town of Red Hook as an insured party in that policy, and to inform the town board of the applicant’s policy with respect to guaranteeing payments in lieu of taxes if a Federal or State agency assumes ownership of the applicant’s contemplated power plant.

. On the heels of the enactment of Local Law No. 2, a neighboring town adopted a similar regulation. Obviously, the proliferation of such local laws would lead to the very “uncoordinated welter of approvals” article VIII was meant to replace, and thereby defeat the purpose and operation of the State regulatory scheme.