Requestors: Robert C. Mulvey, Esq., County Attorney County of Tompkins County Courthouse Ithaca, New York 14850
Requestors: Ian G. MacDonald, Esq., County Attorney County of Dutchess 22 Market Street Poughkeepsie, New York 12601
 Marilyn J. Slaatten, Esq., County Attorney County of Westchester Michaelian Office Bldg, Room 600 148 Martine Avenue White Plains, New York 10601
Written by: James D. Cole, Assistant Attorney General in Charge of Opinions
You have each requested an opinion of the Attorney General as to whether and the extent to which a county may develop affordable housing. This necessitates that we consider whether Article XVIII of the State Constitution precludes county development of low-income housing. If Article XVIII does not prohibit county involvement in this field, the question arises whether there is authority for a county low-income housing program. Further, you seek our view as to possible components and funding sources of such a program.
In a 1978 opinion of this office (1978 Op Atty Gen [Inf] 162), we construed Article XVIII of the Constitution, finding that Article XVIII does not authorize counties to engage in the development or operation of low-income housing. The 1978 opinion did not consider whether Article XVIII actually prohibits counties from any possible involvement in low-income housing development. Nor did it consider whether authority for county affordable housing programs could be found outside of Article XVIII.
In the summer of 1990, we received a brief opinion request from the Westchester County attorney, concerning the construction of permanent housing for the homeless or low-income persons. That request seemed to question the continued viability of the 1978 opinion in light of language found in Article XVII of the Constitution. Upon verifying that Article XVIII had not been amended since 1978, we responded that the 1978 opinion remained viable.
In March of 1991, we received a letter from Jonathan Bowie of the New York City law firm Skadden, Arps, Slate, Meagher and Flom requesting that we consider a lengthy analysis suggesting that counties have the authority under Article XVII of the New York Constitution to create permanent housing for the needy. This was followed by a letter from John R. Nolon, Professor of Law, Pace University School of Law, supporting Mr. Bowie's letter and providing additional analysis supporting the use of Article XVII as authority for county provision of low-income housing. We subsequently received a letter from Bennett L. Gershman, Professor of Law, Pace University School of Law, supporting Mr. Nolon's letter.
These submissions were followed by five opinion requests: two from the Tompkins County attorney, two from the Westchester County attorney and one from the Dutchess County attorney. These requests all raised the question whether there is legal authority from any source for county low-income housing programs. We also received a letter raising this issue from an officer (not the county attorney) of Rockland County. Thus, the level of interest in this issue is great.
As a consequence of these submissions, today we broaden our inquiry to consider for the first time whether Article XVIII serves as a general prohibition against county low-income housing programs and, if not, whether there is any source of authority for county low-income housing programs.
We believe that counties may provide low-income housing utilizing their home rule powers (NY Const, Art IX) and subject to constitutional debt constraints. In that we find authority for a broad based and locally implemented county housing program under Article IX of the State Constitution, it is unnecessary that we consider the provisions of Article XVII.[1]
History of Article XVIII
Article XVIII of the State Constitution had its origin in Proposal No. 146 to the 1938 Constitutional Convention. That proposal called for an amendment adding a new section 17 to Article VII of the Constitution, which then dealt principally with the State's powers to contract debt and use its credit. The proposed section empowered the Legislature to provide for low cost housing, slum clearance, rehabilitation and improvement of existing housing throughout the State. The proposal empowered the Legislature, among other things, to grant tax exemptions, authorize indebtedness, make or authorize grants or subsidies, and exercise or grant the power of eminent domain and zoning for low-income housing purposes. Counties were included among the political subdivisions addressed in this initial draft. Proposal No. 146 read, in pertinent part:
 "In further aid of such public purposes the legislature may by law delegate the foregoing powers or any of them to any state department, officer, board or commission or to any political subdivision, instrumentality or agency of the state, or to any county, city, town or village or instrumentality or agency thereof, and may authorize the acceptance of aid and cooperation from the United States."
Following its submission to the Committee on Housing, this proposal was reported with amendments and submitted to the Committee of the Whole as No. 792. Among the amendments was the elimination of any reference to counties in the proposal. As F.C. Moore, a member of the Committee on Housing, explained early in debate over No. 792, this change was enacted to avoid duplicative effort and pyramiding debt in upstate regions. Moore's comments on this subject are unambiguous:
 "In the City of New York under the proposal, you would have one municipal agency within the city exercising housing powers. Upstate, if counties were left in, we would have the cities, the towns and the villages in the county carrying on housing functions and on top of that we would pyramid the debt by having the county carrying on the same functions, too.[1]
 "We pointed that out and it was one of the first changes urged by the upstate group." Record, p 1526.[2]
Moore subsequently summarized the caution behind this and other amendments introduced into No. 146:
 "We believe that in placing in the Constitution housing powers for the agencies and subdivisions of the State government, we are . . . invading a new field. We feel, however desirable it may be to go into that uncharted territory, we should take along with us as our compass the lesson learned from our fiscal experience of the past, and that such restrictions should be incorporated in the proposal as our experience has determined wise." Record, pp 1528-29.
The unambiguous intent of the framers at the 1938 Convention with respect to Article XVIII, therefore, was to grant to the Legislature a limited power to enable certain specified political subdivisions to engage in the clearance of slums and creation and maintenance of public housing. The exclusion of counties from this group of subdivisions was deliberate.
Proposal No. 792, subsequently amended, was approved together with the remainder of the proposed Constitution by the State's voters on November 8, 1938.
Since that approval, various members of the Legislature have on numerous occasions introduced bills to amend the Constitution to include counties within the scope of Article XVIII.[1] Moreover, county inclusion was explicitly proposed by delegates to the 1967 Constitutional Convention,[2]
was integrated into the final proposal of the Health, Housing, and Social Services Committee,[3] was embraced within Article X, section 12 of the proposed Constitution, and was rejected, together with the rest of the proposed Constitution, by the voters of the State on November 7, 1967.[4]
Article XVIII Does Not Prohibit County Housing Programs
It seems clear that Article XVIII served a two-fold purpose. Affordable housing was established as a public purpose, and legal authority was provided for the establishment by the Legislature of a mechanism for provision of that housing. It provided authority for local governments at a time when they were primarily instruments of the State without any significant home rule authority. Local Government Handbook, 3d Edition, 1982, State of New York Department of State, Ch V, pp 63, et seq. At the time, local governments, with the exception of cities, had not been granted any measure of home rule power. N.Y. Const (1938), Art IX. Therefore, Article XVIII was needed to authorize local housing programs.
It is important to note that the entire thrust of Article XVIII is to convey authority on the enumerated entities. It does not restrict authority granted outside Article XVIII to entities which are not so enumerated. Indeed, Article XVIII, by its express terms, preserves authority granted in other articles of the Constitution. Section 10 of Article XVIII provides:
 "This article shall be construed as extending powers which otherwise might be limited by other articles of this constitution and shall not be construed as imposing additional limitations." Emphasis supplied.
Thus, Article XVIII does not prohibit county low-income housing programs authorized by other provisions of the Constitution.
Since Article XVIII was adopted, home rule progressed and culminated in 1963 with the approval by the people of current Article IX of the Constitution, granting extensive new home rule powers to counties, cities, towns and villages.
As explained below, we believe the home rule powers under Article IX of the State Constitution are sufficiently broad as to permit counties to undertake significant actions in the development of affordable housing.
Authority For County Housing Programs
The power to develop affordable housing, in our opinion, is within the broad delegation of "police power" to local governments contained in Article IX, section 2(c)(ii)(10) of the Constitution and implemented by section 10(1)(ii)(a)(12) of the Municipal Home Rule Law. These provisions authorize local governments, including counties, to adopt local laws relating to the government, protection, order, conduct, safety, health and well-being of persons or property in the local government.
We note that there are limitations on this grant of authority. A municipality may not adopt local laws: (1) which are inconsistent with the Constitution or general State laws; or (2) where the Legislature has expressed an intent to preempt local legislation with respect to a given subject. N.Y. Const, Art IX, § 2(c)(ii); Municipal Home Rule Law § 10(1)(ii); Consolidated Edison v Town of Red Hook, 60 N.Y.2d 99
(1983).[1] Moreover, the local authority for municipal cooperation (NY Const, Art IX, § 1[c]; General Municipal Law Art 5-G);[1] the appropriation of county funds for these purposes; and the financing of the costs of the affordable housing program consistent with general constitutional debt limitations. These actions under Article IX are separate and distinct from the specific scheme for provision of low-income housing by towns, villages and cities under Article XVIII. The inclusion of counties in that scheme would require the amendment of Article XVIII.[2]
With respect to county financing of the cost of affordable housing, we note that Article XVIII, section 4 of the Constitution permits the Legislature to authorize any city, town or village to contract indebtedness for provision of affordable housing in an amount which may not exceed 2% of the average assessed valuation of the real estate of such city, town or village, subject to taxation, as determined from the assessment rolls. This is implemented by Title 11 of the Local Finance Law. These provisions are an authorization for cities, towns and villages to incur debt, up to the 2% limit, exclusively to implement the purposes of Article XVIII of the Constitution. Other municipal capital improvements are financed under other provisions, subject to constitutional debt limitations. There is nothing, however, in Article XVIII which prohibits a county, or for that matter any other local government, from financing the construction of housing utilizing financing authority available under these other provisions.
Article VIII, section 2 of the State Constitution authorizes counties, cities, towns and villages or school districts to contract indebtedness for municipal or school district purposes. The indebtedness may be contracted within the period of probable usefulness (PPU) of the subject or purpose for which the indebtedness is issued. N.Y. Const, Art VIII, § 2. Counties may not contract indebtedness which when added to existing indebtedness exceeds 7% of the average full valuation of taxable real estate of the county, except as to Nassau County where the limit is 10%. N.Y. Const, Art VIII, § 4.
We believe that counties may finance affordable housing within this 7% (10% in Nassau County) debt authority. Through the enactment of a local law authorizing affordable housing, a county can establish affordable housing as a proper municipal purpose for which county funds can be expended. Thus, affordable housing would become a "county purpose" as is required under Article VIII, § 2 of the State Constitution. (Seealso, § 10 of the Local Finance Law.) Further, subject to bond counsel review, several provisions of section 11 of the Local Finance Law may provide periods of probable usefulness with respect to the contracted indebtedness for the housing program. See, subdivisions 11, 21 and 35 of section 11 of the Local Finance Law.[1]
In conclusion, we find that the exclusion of counties from those political subdivisions described in Article XVIII was a deliberate decision by the framers at the 1938 Constitutional Convention. Counties may, however, provide low-income housing under their home rule powers and within constitutional debt constraints.
[1] Article XVII establishes the aid, care and support of the needy as public concerns to be provided by the State and its subdivisions.
[1] Earlier in the debate, Moore's comments are marked with a significant transcription error.
 "The first question presented [in reviewing no. 146] was, should all these subdivisions of government, these municipalities, be permitted to go into the field of housing? We do not believe that the county should not be permitted to do so."
It is clear from the context of his remarks and from the proposals he endorsed that Moore actually believed that counties should not be permitted to enter the housing field.
[2] See, also, pp 1527-1529, describing Moore's efforts to impose 2% limits on town and village borrowing and discouraging state subsidies for housing purposes.
[1] See, e.g., 1966: S1651 (Van Lare), A3700 (Rosenberg); 1967: S3093 (Laverne), A3081 (Lill); 1968: S2101 (Laverne), A2835 (Lill), A3239 (Harwood); 1969: S251 (Laverne), S3336 (Paterson), A2311 (Eve), A2366 (Lill); 1970: S6487 (Laverne), A3084 (Van Cott), A3407 (Lill), A5523 (Eve); 1971:A1681 (Lill), S2528 (Stewart), A1267 (Eve), A4722 (Haley); 1972: A8482 (Lill), A10452 (Haley); 1984: A9472 (Bennett), S7747 (Schermerhorn); 1985: A5454 (Halpin), S3623 (Lack); 1986: S7026 (Jenkins), S7873 (Lack), A9526 (Halpin); 1987: S872 (Jenkins), S5322 (Lack), A3348 (Halpin), A8381 (Rules); 1988: S7262 (Lack), A8717 (Brodsky), S9067 (Cook), A11632 (Rules); 1989: A4318 (Brodsky), S2933 (Lack), A8475 (Rules), A2451 (Brodsky), A8002 (Rules), S4480 (Cook), A1665 (Hinchy), S651 (Jenkins); 1990: A9514 (Hinchey), S7057 (Cook); 1991: A2697 (Hinchey), A3311 (Grannis).
[2] See, propositions No. 332 (Howe) and No. 568 (White)
[3] See, Proceedings of the Constitutional Convention of the State ofNew York (1967), Vol. XI, Document No. 48 ("Final Report of the Health, Housing and Social Services Committee"). The Committee determined that specific inclusion of the proposals to extend housing powers to counties was unnecessary, as such powers were implicit in the general purpose clause approved by the Committee. Final Report, pp 46-47.
[4] See also, State of New York Temporary State Commission on the Constitutional Convention, Housing, Labor, Natural Resources [Vol. 9] (New York: State of New York, March 24, 1967), pp 28-29 (discussing controversial nature of proposal to involve counties in housing and urban renewal programs).
[1] A desire to preempt may be deduced either from (1) a declaration of State policy by the Legislature (Robin v Incorporated Village ofHempstead, 30 N.Y.2d 347 (1972); or (2) the fact that a comprehensive and detailed regulatory scheme in a particular area has been enacted by the Legislature (People v DeJesus, 54 N.Y.2d 465 [1981]).
[1] Cooperation by counties with other local governments in fulfilling regional housing needs avoids the overlapping of programs, which was a concern of the drafters of Article XVIII. Through cooperation, each participating local government can contribute its resources to a joint venture providing low-income housing in the region.
[2] We point out that the State Legislature in 1989 passed a bill (S2933A) to amend Article XVIII to include counties. This bill was introduced in the Legislature again in 1991 (A3311) but did not pass. In that an amendment to the Constitution must be approved by two consecutive Legislatures and approved by the people, the amendment process must begin anew. See, N.Y. Const, Art XIX, § 1.
[1] We note that subdivision 41 of section 11 provides a PPU for housing effectuating "any of the purposes of the public housing law". While the Public Housing Law excludes counties from certain housing activities, subdivision 41 should not be viewed as prohibiting the application of other subdivisions of section 11 which may provide PPUs for county housing programs. Subdivision 41 of section 11 of the Local Finance Law implements the 2% debt authorization for housing by cities, towns and villages under Article XVIII of the State Constitution. (Seealso, Title 11 of the Local Finance Law.) Counties may utilize their 7% debt authority (10% in Nassau County) for financing the construction of affordable housing.
The exclusion of counties from the 2% debt authorization for housing purposes was intended by the drafters of Article XVIII in order to prevent the spiraling of debt. It follows that the financing of housing by a county utilizing its general authority to finance capital improvements, subject to the 7% debt limitation (10% in Nassau County) is consistent with Article XVIII.