Informal Opinion No. 98-13 Robert Cimino, Esq. County Attorney County of Suffolk H. Lee Dennison Building 100 Veterans Memorial Highway Hauppauge, N Y 11788
Dear Mr. Cimino:
You have asked whether a municipality in the service area of the Long Island Lighting Company (LILCO) and/or the Long Island Power Authority (LIPA) may condemn the transmission and distribution system, facilities, and other assets of LILCO and/or LIPA and use them to operate a municipal utility, or whether such action is inconsistent with or preempted by State law governing LIPA.
First, we conclude that condemnation by a municipality in the service area of LILCO (defined as LILCO's franchise area [Public Authorities Law § 1020-b (17)]) of any portion of the transmission and distribution system, facilities and other assets of LILCO is inconsistent with and preempted by Title 1-A of Article 5 of the Public Authorities Law. We believe it is clear that the Legislature has conferred upon LIPA exclusive authority to acquire LILCO. Second, we conclude that condemnation by municipalities in LIPA's service area of any LIPA assets is inconsistent with and preempted by these same provisions. The Legislature has authorized LIPA, subsequent to acquisition of LILCO, to provide power to ratepayers in the service area. Public Authorities Law § 1020-b(17). The existing legislative scheme vests LIPA with the authority, in its sole discretion, to transfer assets to municipal utilities or enter into agreements with municipal utilities in the service area. Id., §§ 1020-f, 1020-g. These provisions are part of a specific statutory scheme which preempts the field, and which cannot be overridden by inconsistent local legislation or other local action. We base these conclusions on the following provisions of State law, decisions of the courts and statutory analysis.
In its legislative findings which preface Title 1-A of Article 5, the Legislature declared that "[c]onstantly escalating and excessive cost of electricity" in the service area of LILCO "pose[s] a serious threat to the economic well-being, health and safety of the residents of and the commerce and industry in the service area". Id., § 1020-a. Further, the Legislature declared:
 There is a lack of confidence that the needs of the residents and of commerce and industry in the service area for electricity can be supplied in a reliable, efficient and economic manner by the Long Island lighting company. Id.
Also, the Legislature found that the decisions by LILCO to commence construction of the Shoreham Nuclear Power Plant and to continue construction of the plant were imprudent. Id. Investment in the nuclear power plant has created significant rate increases, straining economic capabilities of ratepayers in the service area. Id. Further, the Legislature found that additional rate increases would be necessary if the plant is placed in service. Id. For all of these reasons, the Legislature concluded that a situation exists which threatens the economy, health and safety in the service area. Id.
Significantly, the Legislature stated that "[d]ealing with such a situation in an effective manner, assuring the provision of an adequate supply of electricity in a reliable, efficient and economic manner . . . [to retain industry and commerce and attract new industry and commerce] . . . are . . . matters of state concern within the meaning of paragraph three of subdivision (a) of section three of article nine of the state constitution. Such matters of stateconcern best can be dealt with by replacing such investor owned utilitywith a publicly owned power authority". Id. (emphasis supplied).
To effectuate this policy, LIPA has been created as a body corporate and politic and a political subdivision of the State to exercise essential governmental and public powers. Id., § 1020-c(1). The area of operation of LIPA is the "service area", defined as LILCO's franchise area. Id., § 1020-b(17). Specifically, the Legislature has directed that LIPA achieve the legislative policy through purchase or condemnation of either the securities or assets of LILCO, whichever is less expensive for the ratepayers in the service area and is the most appropriate means of dealing with the emergency involving the economy, health and safety in the service area. Id., § 1020-h(1)(a), (2).
The Legislature has required that LIPA enter into negotiations with LILCO for the purchase of such stocks or assets upon terms that LIPA in its sole discretion determines will result in rates equal to or less than rates payable under LILCO's continued operation. Id., § 1020-h(1)(b). The Legislature found that:
 Such an acquisition by the authority of the securities or assets of LILCO serves the public purposes of assuring the provision of an adequate supply of gas and electricity in a reliable, efficient and economic manner and retaining existing commerce and industry in and attracting new commerce and industry to the service area, all of which are matters of state-wide concern. Id., § 1020-h(1)(n).
Once LIPA has acquired the securities or assets of LILCO, it is authorized to transfer assets acquired from LILCO to municipal gas or electric agencies "for such consideration and upon such terms as the authority may determine to be in the best interests of the gas and electric ratepayers in the service area". Id., § 1020-f(t). Also, LIPA may cooperate and enter into contracts with municipalities. Id., § 1020-g(k).
The Legislature has expressly stated that these provisions, "being necessary for the prosperity of the state and its inhabitants, shall be liberally construed to effect the purposes hereof". Id., § 1020-ff. "Insofar as the provisions of this title are inconsistent with the provisions of any other law or any part thereof, the provisions of this title shall be controlling". Id., § 1020-gg.
In our view, the Legislature has evidenced an unequivocal legislative intent. As stated in an opinion of the Appellate Division in Long IslandLighting Co. v. Suffolk Co., 119 A.D.2d 128 (2d Dept), motion for leave toappeal denied, 68N Y 2d 607, appeal as of right dismissed, as nosubstantial constitutional question directly involved, 68 N.Y.2d 802
(1986), a case presenting facts very similar to those at hand and in which the court relied upon the same body of State law:
 There can be little question that the State Legislature intended to confer upon LIPA the exclusive authority to acquire LILCO and that Public Authorities Law article 5, title 1-A, necessarily occupies the field in connection with such acquisition. Long Island Lighting Co. v. Suffolk Co., 119 A.D.2d at 135.
The Legislature's intent is clearly stated in the statutory directive that:
 LIPA shall acquire from LILCO all franchise and utility service responsibilities for all ultimate consumers of gas and electricity within LILCO's former service territory, including the responsibility to provide safe and adequate service. Public Authorities Law § 1020-g(n).
Equally unequivocally, the Legislature has characterized the imperiled economic conditions in the service area caused by the excessive and constantly escalating cost of electricity as "matters of state concern". The remedy is the acquisition by LIPA of LILCO assets and the provision of power by LIPA in the service area on a more economical basis. The reference in section 1020-a to "matters of state concern" within the meaning of Article IX, § 3(a) of the State Constitution is particularly significant. Under this provision of the State Constitution, as to matters other than the property, affairs or government of a local government, i.e., matters of State concern, the Legislature is unrestricted by the home rule authority of local governments. See, Adlerv. Deegan, 251 N.Y. 467 (1929); Kelley v. McGee, 57N Y 2d 522 (1982). Concomitantly, local governments, in exercising their home rule authority by enacting local legislation or in taking other action, must be consistent with State laws dealing with matters of State concern. Id.
Unquestionably, the Legislature has declared that the provisions of the Public Authorities Law governing LIPA, the acquisition of LILCO by LIPA and subsequent provision of power by LIPA in the service area are matters of State concern. Therefore, municipalities in the service area may not enact local legislation or take other action inconsistent with these provisions.
LIPA has in fact entered into agreements with LILCO to acquire all outstanding common stock of LILCO, subject to regulatory approval. The approval process has been almost completed. The statute clearly establishes that LIPA, upon exercising its right to purchase the assets or securities of LILCO, in its sole discretion may transfer acquired assets to municipal utilities or enter into cooperative or contractual arrangements with municipalities in the service area. Clearly, condemnation by a municipality of any LIPA assets is inconsistent with these provisions. Only LIPA is authorized to determine whether assets should be transferred and the terms and conditions of transfer.
It is also clear that a local government may not condemn the assets of LILCO or LIPA under Article 14-A of the General Municipal Law. Article 14-A provides general authority to establish municipal utilities. The exercise of such general authority by a municipality clearly is inconsistent with the specific statutory scheme applicable to the LILCO service area, providing the exclusive means of dealing with economic conditions in the service area through the purchase of LILCO by LIPA and subsequent provision of power in the service area by LIPA. Under established rules of statutory construction, specific statutes prevail over general statutes. See, People v. Mobil Oil Corp., 48N Y 2d 192, 200 (1979). Article 14-A may not be used for this purpose.
Further, the public use of property acquired from LILCO by LIPA "is . . . deemed to be superior to the public use of such property by any other person, association, or corporation". Public Authorities Law §1020-h(1)(a). Moreover, the law in New York is that without express State statutory authorization, property that is being used for a public use may not be condemned. The Long Island Rail Road Company v. Long IslandLighting Company, 103 A.D.2d 156, 165 (2d Dept 1984), affd, 64 N.Y.2d 1088
(1985). This doctrine is referred to as the prior public use rule. Id. Municipalities in the service area do not possess express statutory authority to condemn assets of LIPA acquired from LILCO. Rather, Article 14-A of the General Municipal Law constitutes only general authority, and therefore is inadequate to overcome the public use doctrine. Long IslandRail Road Company, supra.
Finally, the authority to enact local legislation is denied when the State Legislature has expressed an intent to preempt a particular subject. Albany Area Builders Assn. v. Town of Guilderland, 74 N.Y.2d 372
(1989); Consolidated Edison Co. v. Town of Red Hook, 60 N.Y.2d 99
(1983); People v. DeJesus, 54 N.Y.2d 465 (1981); Wholesale Laundry Bd.v. City of NY, 17 A.D.2d 327, 330 (1st Dept 1962), affd, 12 N.Y.2d 998
(1963). A legislative intent to preempt local legislation is evident either from a declaration of State policy by the Legislature or from a comprehensive and detailed regulatory scheme covering a particular subject. Id. In our view, the Legislature, both through a declaration of State policy and a comprehensive and detailed regulatory scheme, has preempted local legislation regarding acquisition of the transmission and distribution system, facilities, and other assets of LILCO and/or LIPA.
We conclude that a municipality in the service area may not condemn the transmission and distribution system, facilities and other assets of LILCO and/or LIPA and use them to operate a municipal utility. Such action clearly is inconsistent with and preempted by State law.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE
Assistant Attorney General
In Charge of Opinions