Gregory F. Yakaboski, Esq. Informal Opinion No. 99-27 Town Attorney Town of Southold P. O. Box 1179 Southold, New York 11971
Dear Mr. Yakaboski:
You have advised us that the Town of Southold desires to form a "public utility service" pursuant to Article 14-A of the General Municipal Law. The Town would use this public utility service to purchase low cost electric power on the open market and distribute this power to the residential and commercial users in the Town of Southold. The public utility service would own no infrastructure, relying entirely upon transmission and distribution lines owned by the Long Island Power Authority ("LIPA"). In this respect, you have stated that the Town public utility service would act as an "energy broker." The Town is within the former service area of the Long Island Lighting Company ("LILCO").
You have inquired whether the Town has the authority under Article 14-A of the General Municipal Law to form a public utility service given the creation and existence of LIPA; and how LIPA's enabling statute would affect the powers of such a public utility service, including the use of LIPA transmission lines.
Municipalities have broad authority to establish public utilities. Pursuant to General Municipal Law § 360(2), a municipal corporation may
 construct, lease, purchase, own, acquire, use and/or operate any public utility service within or without its territorial limits, for the purpose of furnishing to itself or for compensation to its inhabitants, any service similar to that furnished by any public utility company specified in article four of the public service law. For such purpose, any municipal corporation may purchase gas or electrical energy from the state, or from any state agency, or other municipal corporation, or from any private or public corporation.
General Municipal Law § 360(6) provides that a municipal corporation may for such purpose acquire the public utility service of any public utility company within or without its territorial limits by purchase or condemnation.
The above provision must be applied taking into consideration LIPA's legislative authority. LIPA was created pursuant to Article 1-A of the Public Authorities Law to replace the privately owned LILCO with a publicly owned power authority. See, Public Authorities Law § 1020-a. The Town of Southold formerly was served by LILCO. Id.
Public Authorities Law § 1020-g(n) provides that "LIPA shall acquire from LILCO all franchise and utility service responsibilities for all ultimate consumers of gas and electricity within LILCO's former service territory, including the responsibility to provide safe and adequate service." Section 1020-h(1)(a) sets forth a legislative determination that the public use of the former LILCO property by LIPA is "deemed to be superior to the public use of such property by any other person, association, or corporation." Therefore, LIPA has the exclusive responsibility to ensure safe and adequate public utility service in LILCO's former service area, which includes the Town.
LIPA is empowered to transfer any of its assets to one or more municipal electric agencies established pursuant to Article 14-A of the General Municipal Law, for such consideration and upon such terms as LIPA may determine to be in the best interest of the electric ratepayers in the service area. Public Authorities Law § 1020-f(t)(ii). Section 1020-g(j)(iii) empowers LIPA to cooperate with and enter into contractual arrangements with private utility companies or public entities "with respect to the construction, acquisition, ownership, operation and/or use of transmission facilities."
The Attorney General has previously concluded that a municipality in the service area of LIPA may not condemn the transmission and distribution system, facilities and other assets of LIPA and use them to operate a municipal utility pursuant to Article 14-A of the General Municipal Law.See, Op Atty Gen (Inf) 98?13. We concluded that the LIPA enabling act is a "specific statutory scheme which preempts the field, and cannot be overridden by inconsistent local legislation or other local action." Seealso, Long Island Lighting Co. v. County of Suffolk, 119 A.D.2d 128 (2d Dept), lv denied, 68 N.Y.2d 607, appeal dismissed, 68 N.Y.2d 802 (1986).
In our prior opinion, we stated as follows:
 The [LIPA] statute clearly establishes that LIPA, upon exercising its right to purchase the assets or securities of LILCO, in its sole discretion, may transfer acquired assets to municipal utilities or enter into cooperative or contractual arrangements with municipalities in the service area. . . . Only LIPA is authorized to determine whether assets should be transferred and the terms and conditions of transfer.
Therefore, we conclude that a municipality located within LILCO's former service area may not establish a public utility service to provide gas or electric power without LIPA's agreement. LIPA has exclusive authority to ensure power in LILCO's former service area. LIPA may, in its sole discretion, enter into contracts with municipalities providing for transfer of any of its assets to a municipal electric agency established pursuant to Article 14-A of the General Municipal Law and permitting construction, acquisition, ownership, operation and/or use of transmission facilities.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
WILLIAM E. STORRS, Assistant Solicitor General